UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
DAVID ROBLES,

Petitioner,

-against-

JOHN LEMPKE,

Respondent.
----------------------------------------------------------x

**MEMORANDUM AND ORDER**
09-CV-2636 (AMD) (JO)

**ANN M. DONNELLY, United States District Judge,**

David Robles, proceeding *pro se*, filed a habeas petition under 28 U.S.C. § 2254 challenging his state convictions for attempted murder in the first degree and related offenses, for which he was sentenced to an aggregate prison term of 40 years to life. In a Report and Recommendation dated September 9, 2011, Magistrate Judge James Orenstein recommended that the petition be denied. The Honorable Sandra Townes later adopted Judge Orenstein's Report and Recommendation in its entirety. (Report and Recommendations dated Sept. 9, 2011, Dkt. No. 35 ("R&R"), *adopted by*, Order dated Nov. 14, 2012, Dkt. No. 45.).[1] Almost six years later, in a motion pursuant to Federal Rule of Civil Procedure 60(b), Robles argues that one of his lawyers was ineffective for failing to inform him of a pre-indictment plea offer that included a 12-year determinate sentence. For the reasons set forth below, Robles' motion is denied.

I.    **Background**

A.    **Factual History**

At around 2 a.m. on March 3, 2003, two intruders repeatedly stabbed William Lavery and his brother in their third-floor Queens apartment.[2] (R&R at 1–2.) During the attack, the Laverys

---

[1] This case was reassigned to me in February of 2018.

[2] A more detailed recitation of this case's factual and procedural history is set forth in Judge Orenstein's Report and Recommendation.

fought back by biting the intruders. (*Id.* at 2.) Shortly after the attack, a neighbor saw Robles, who lived one floor below the victims, covered in blood. (*Id.* at 2–3.) A police detective who interviewed Robles saw what looked like a bite mark on Robles' hand. (*Id.* at 3.) Robles confessed to his involvement in the attack—both in writing and in a videotaped statement. (*Id.*) In those statements, Robles said that the attack was part of an agreement with his landlord, who wanted to oust the Laverys from their apartment. (*Id.*) Days after the attack, William Lavery identified Robles from a photograph as one of the assailants. (*Id.* at 4.)

## B.    Procedural History

In June of 2004, following a jury trial before Justice Evelyn Braun of New York Supreme Court, Queens County, Robles was convicted of attempted murder in the first degree and 16 related offenses. (*Id.* at 6; Dkt. No. 6-2 at 50, 193.[3]) The court sentenced him to an aggregate prison term of 40 years to life. (R&R at 6.) The Appellate Division, Second Department unanimously affirmed the conviction, and the New York Court of Appeals denied leave to appeal. *People v. Robles*, 34 A.D.3d 849 (2d Dep't 2006), *leave denied*, 8 N.Y.3d 884 (N.Y. 2007). In May of 2007, Robles, proceeding *pro se*, filed a motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. (R&R at 8.) Justice Braun denied the motion in October of 2008, and the Appellate Division, Second Department denied leave to appeal in January of 2009. (*Id.* at 8–9.)

In June of 2009, Robles filed a habeas petition alleging 11 claims for relief. (*Id.* at 9, 10– 11.) Among other things, he argued that his confession was involuntary and obtained in violation of his *Miranda* rights; that Lavery's identification of him was unduly suggestive and

---

[3] Citations to page numbers of docketed submissions refer to the pagination generated by this District's Electronic Case Files ("ECF") system. Citations to paragraph (¶) numbers refer to the numeration internal to the document.

should have been suppressed; and that his trial counsel was ineffective for various reasons. (*Id.* at 9, 40, 61–62.) In his ineffectiveness claim, Robles targeted the performance of Kathleen Gallo, the attorney who represented him at trial. (*Id.* at 61–62.) Before Gallo began representing Robles, attorney Tejender Baines served as his counsel. (Petitioner's Rule 60(b) Motion dated Aug. 14, 2017, Dkt. No. 55 ("Pet. Mot."), at 2 ¶ 2.) At Robles' request, the trial judge discharged Baines in early April of 2003.[4] Robles' habeas petition, however, did not mention Baines, let alone allege that he was ineffective.

Judge Townes referred Robles' habeas petition to Magistrate Judge Orenstein for a report and recommendation. (Dkt. Entry dated 12/04/2009.) In September of 2011, Judge Orenstein issued a report in which he recommended that Robles' petition be denied. (R&R at 84.) In November of 2012, the Court adopted Judge Orenstein's report in its entirety and denied Robles' petition. (Dkt. No. 45.)

In July of 2012, Robles filed a second § 440.10 motion in state court, arguing for the first time that his first attorney—Baines—was ineffective because he did not inform him or Gallo that on March 19, 2003, the prosecution had made a pre-indictment plea offer that included a determinate sentence of 12 years. (Pet. Mot. at 1, 2, 17.) Robles learned about the offer on May 17, 2004 (the first day of trial), when an assistant district attorney mentioned the previous offer

---

[4] Robles asked the trial court to assign him new counsel because he and Baines had a "'difference of opinion'" about his case and because he believed that Baines, a Legal Aid Society attorney, was trying to "'railroad him'" through the system. (Pet. Mot. at 26, 46.) Although the court took issue with this assessment, it agreed to assign Robles an attorney from the 18-B Panel "'just to avoid any problems.'" (*Id.* at 26.); *see Mitchell v. Fishbein*, 377 F.3d 157, 160 (2d Cir. 2004) (describing the Legal Aid Society as New York City's "principal provider of legal services to indigent [criminal] defendants" and noting that the composite of attorneys available to provide additional services "is generally referred to as an '18–B Panel.'"). Gallo took over as Robles' lawyer on April 1 or 2, 2003—a few weeks before the Grand Jury indicted him (on April 24). (Dkt. No. 6-2 at 5; Pet. Mot. at 63.)

on the record. (*Id.* at 17, 54–55; Dkt. No. 6-2 at 50, 193.) By that point, the offer was off the table. (Pet. Mot. at 18, 55.)

Justice Braun held a hearing on Robles' second § 440.10 motion at which Robles, Baines, Gallo, the prosecuting assistant district attorney, and a supervising assistant district attorney testified. (*Id.* at 13 ¶ 11.) Robles testified that he would have taken the pre-indictment plea offer had he known about it. (*Id.* at 33–34, 73.)

In October of 2014, Justice Braun issued an 86-page decision denying Robles' § 440.10 motion. (*Id.* at 13, 41.) Although Robles has annexed only three pages of that decision to his motion (*id.* at 26–27, 41), Justice Braun apparently concluded that Baines did not inform Robles or Gallo about the pre-indictment plea offer, or put the offer on the record. (*Id.* at 13, 26–27.) As a result, she determined that Baines' performance fell below an objectively reasonable level and that Robles therefore satisfied *Strickland*'s first prong for establishing a claim of ineffective assistance of counsel. (*Id.* at 2, 27.)[5] Justice Braun apparently concluded that Robles failed to meet *Strickland*'s second prong, and that there was no prejudice because Robles would have rejected the plea offer had he known about it. (Pet. Mot. at 3 ¶ 5.)[6] Consequently, Justice Braun

---

[5] *See, e.g.*, *Brightley v. Heath*, No. 11-CV-1761 (LGS) (DF), 2015 WL 10487766, at *33 (S.D.N.Y. Jan. 6, 2015), *adopted by*, 2016 WL 1060326 (S.D.N.Y. Mar. 15, 2016) ("[T]he two-pronged *Strickland* test [inquires] first as to whether counsel's performance fell below an objectively reasonable level, and second, as to whether the petitioner suffered prejudice as a result.") (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

[6] The record includes little evidence from the § 440.10 hearing. Although Robles has represented that the hearing transcript is 400 pages (Pet. Mot. at 51), his motion papers include only 25 of those pages (in scattered two- to five-page excerpts), and no hearing exhibits are before the Court. That said, much of the testimony in the excerpted transcript pages concerns correspondence between Robles and Gallo, and that correspondence suggests that Robles would have been unwilling to plead guilty in exchange for a 12-year sentence. For example, in a July 2003 letter, Robles told Gallo that he was "innocent" and would "never admit to something [he] did not do." (*Id.* at 29–30.) He opined that the prosecution's case was filled with "discrepancies" and, as a result, he believed that he could "win" at trial. (*Id.* at 29.) In an August 2003 letter, Robles suggested to Gallo that he would reject a 10-year plea offer. (*Id.* at

denied the § 440.10 motion. (Pet. Mot. at 41.) Robles moved for a "Reargument/Rehearing," and Justice Braun denied the motion in December of 2014. (*Id.* at 13 ¶ 13.) Three months later, the Appellate Division, Second Department denied leave to appeal and, on May 18, 2015, the New York Court of Appeals also denied leave. (*Id.* at 13–14 ¶¶ 16–17.)

In papers filed on August 27, 2015, Robles asked the Second Circuit for leave to file a successive habeas petition. (Dkt. No. 56-1.) He argued that he was denied effective assistance of counsel based on Baines' mishandling of the prosecution's pre-indictment plea offer. (*Id.* at 8.) On September 21, 2015, the Second Circuit denied the motion because Robles failed to satisfy the requirements of 28 U.S.C. § 2244(b). (Dkt. No. 54.)

### C.     Rule 60(b) Motion

Almost two years later, on August 25, 2017, Robles filed this motion under Rule 60(b) to "challenge and test the legality" of Justice's Braun's denial of his second § 440.10 motion, and "to have her judgment/decision overturned on facts of law." (Pet. Mot. at 3 ¶ 6.) Robles purports to proceed under subsections (3), (4), and (6) of Rule 60(b). (*Id.* at 2 ¶ 3). These subsections, respectively, permit district judges to vacate judgments that are procured by "fraud" or are "void" or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(3)–(4), (6).

Robles argues that Justice Braun's decision denying his second § 440.10 motion "is contrary to all state and federal standards set forth by the United States Supreme Court." (Pet. Mot. at 11.) In his view, these authorities dictate that "whenever there is a bona fide ineffective assistance of counsel, as in this instant case . . . , prejudice is *automatically* attached." (*Id.* (emphasis in original).) According to Robles, Justice Braun correctly concluded that Baines' performance was objectively unreasonable under *Strickland*'s first prong, but erred in finding no

---

34). In a March 2004 letter, Robles suggested that the most he would accept would be a "two-to-four year" sentence. (*Id.* at 38.)

prejudice under the second prong because he would have accepted the 12-year plea offer had he known about it. (*Id.* at 19.) Robles appears to believe that Justice Braun's decision was motivated at least in part by her personal animus against him. (*Id.* at 21–22.) His submission includes complaints that he has filed against the judge—including with the New York State Commission on Judicial Conduct—in which he accuses her of flouting state and federal law in her rulings against him. (*Id.* at 42–52.)

In September of 2017, New York's Attorney General opposed Robles' motion, arguing that it constitutes a successive habeas petition and warrants dismissal on that basis. (Declaration in Opposition to Petitioner's Motion Pursuant to FRCP 60(B) dated Sept. 14, 2017, Dkt. No. 56, ¶ 6.) Robles filed one reply declaration in October of 2017 and another in February of 2018. (Declaration in Opposition to the People's Opposition filed on Oct. 2, 2017, Dkt. No. 57 ("Pet. First Reply"); Declaration in Support for Relief from Judgement filed on Feb. 1, 2018, Dkt. No. 59 ("Pet. Second Reply").) Given Robles' *pro se* status, the Court considers both declarations and construes all of his submissions liberally, interpreting them to raise the strongest arguments that they suggest.

## II.    Discussion

### A.    Legal Standard

Federal Rule of Civil Procedure 60(b) provides that district courts may relieve parties from judgments and orders under specific circumstances. Though Rule 60(b) applies to habeas proceedings, a petitioner cannot use it "to avoid the restriction on second or successive habeas corpus petitions," and courts have "the obligation to characterize the request for relief properly, regardless of the label that the petitioner applies." *Dent v. United States*, No. 09-CV-1938 (BMC), 2013 WL 2302044, at *2 (E.D.N.Y. May 24, 2013); *see also* Fed. R. Civ. P.

81(a)(4)(A); *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005) ("Rule 60(b), like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings under 28 U.S.C. § 2254 only to the extent that it is not inconsistent with applicable federal statutory provisions and rules.") (internal alterations, quotation marks, and citations omitted).

"A Rule 60(b) motion has a 'different objective[]' than a habeas petition." *Carbone v. Cunningham*, 857 F. Supp. 2d 486, 488 (S.D.N.Y. 2012) (quoting *Rodriguez v. Mitchell*, 252 F.3d 191, 197 (2d Cir. 2001)). Specifically, habeas "petitions seek to invalidate an underlying criminal conviction [or sentence], whereas Rule 60(b) motions only seek to vacate a judgment, such as a judgment dismissing a habeas petition." *Ackridge v. Barkley*, No. 06-CV-3891 (CS) (LMS), 2008 WL 4555251, at *5 (S.D.N.Y. Oct. 7, 2008); *see also United States v. Christian Bros. Contracting Corp.*, 586 F. App'x 79, 80 (2d Cir. 2014). "A motion that 'seeks to add a new ground for relief' or that 'attacks the federal court's previous resolution of a claim on the merits' can only be raised in a successive habeas petition, as compared to a motion identifying 'some defect in the integrity of the federal habeas proceedings,' which may be considered on a Rule 60(b) motion." *United States v. Spigelman*, No. 05-CR-960 (JPO), 2017 WL 2275022, at *3 (S.D.N.Y. May 24, 2017) (quoting *Gonzalez*, 545 U.S. at 532) (emphasis omitted). "A Rule 60(b) motion attacks the integrity of a habeas proceeding if it does not 'assert, or reassert, claims of error in the movant's state conviction.'" *Hamilton v. Lee*, 188 F. Supp. 3d 221, 239 (E.D.N.Y. 2016) (quoting *Gonzalez*, 545 U.S. at 531). Examples of proper Rule 60(b) motions include arguments that a court erroneously avoided deciding the merits of a claim for reasons such as "failure to exhaust, procedural default, or statute-of-limitations bar." *Gonzalez*, 545 U.S. at 532 n.4.

"Under the Antiterrorism and Effective Death Penalty Act ('AEDPA'), successive federal habeas petitions requesting relief from a conviction in state court must satisfy strict requirements before a district court can adjudicate them on the merits." *Hamilton*, 188 F. Supp. 3d at 239 (citing 28 U.S.C. § 2244(b)).  Specifically, before a district court may even entertain a successive habeas petition, the Second Circuit must certify that the petition (1) does not raise a "claim that has already been adjudicated in a previous petition" and (2) that it "relies on either a new and retroactive rule of constitutional law or new facts showing a high probability of actual innocence." *Gonzalez*, 545 U.S. at 529–30 (citing 28 U.S.C. §§ 2244(b)(1)–(2)).  "Absent authorization from the Second Circuit," district courts "lack[] jurisdiction to consider a successive habeas petition." *Sterling v. Kuhlman*, No. 97-CV-2825 (RWS), 2006 WL 177404, at *2 (S.D.N.Y. Jan. 25, 2006) (citing *Torres v. Senkowski*, 316 F.3d 147, 149 (2d Cir. 2003)).

When presented with successive habeas petitions stylized as Rule 60(b) motions, the district court has "two procedural options: (i) the court may treat the Rule 60(b) motion as 'a second or successive' habeas petition, in which case it should be transferred to [the Second Circuit] for possible certification, or (ii) the court may simply deny the portion of the motion attacking the underlying conviction 'as beyond the scope of Rule 60(b).'" *Harris v. United States*, 367 F.3d 74, 82 (2d Cir. 2004) (quoting *Gitten v. United States*, 311 F.3d 529, 534 (2d Cir. 2002)).  Of course, if the Second Circuit has already denied certification, any transfer to the Second Circuit for certification "would be futile." *Persaud v. United States*, No. 04-CV-2862 (CBA), 2010 WL 538823, at *3 (E.D.N.Y. Feb. 11, 2010).

## B.    Application

Although Robles styles his application as a Rule 60(b) motion, it is in reality a successive habeas petition and must be denied as outside the scope of Rule 60(b).  As a preliminary matter,

in his initial motion papers, Robles appears to assume that Rule 60(b) allows district courts to vacate the orders and judgments of other courts. Thus, Robles asks this Court to vacate Justice Braun's order denying his second § 440.10 motion, arguing that her decision "was procured by fraud" because it "contradicts federal law" and that it "is void because [Justice] Braun abused her power" when issuing her ruling. (Pet. Mot. at 2–3 ¶¶ 3–5 (citing Fed. R. Civ. P. 60(b)(3)–(4)). Rule 60(b), however, allows a district court to vacate only its own orders and judgments, and only in the civil context. *See Negron v. United States*, 164 F. App'x 158, 158–59 (2d Cir. 2006) ("Federal Rules of Civil Procedure 'govern the procedure in the United States district courts in all suits of a *civil* nature' . . . . Thus, Rule 60(b) cannot afford [petitioner] relief from his judgment of conviction in a criminal case.") (quoting Fed. R. Civ. P. 1); *Ford v. Dep't of Soc. Servs.*, No. 10-CV-3800 (RWS), 2011 WL 1458138, at *6 (S.D.N.Y. Mar. 22, 2011) ("Rule 60(b)(6) only 'allows a district court to vacate its own final judgment.'") (quoting *Socialist Republic of Romania v. Wildenstein & Co.*, 147 F.R.D. 62, 65 (S.D.N.Y. 1993)).[7]

In his reply papers, Robles appears to realize his mistake, as he states that the "judgment sought to be vacated . . . is a judgment of this Court"—presumably referring to the Court's November 2012 judgment denying his habeas petition. (Pet. Second Reply at 2.) In Robles' view, the Court would have ruled in his favor had it known about his ineffectiveness claim against Baines when deciding his habeas petition. (*Id.* (contending that the Court's November 2012 decision was "founded upon error not in the law, but rather an error of fact not appearing on the face of the record which was unknown at the time to the Court" and that the Court's

---

[7] Of course, any Rule 60(b) motion in a § 2254 proceeding is "'a step on the road to the ultimate objective of invalidating'" a state court's "'judgment of conviction.'" *See Claudio v. Portuondo*, No. 01-CV-5180 (RJD), 2014 WL 1347185, at *4 (E.D.N.Y. Mar. 31, 2014) (quoting *Rodriguez v. Mitchell*, 252 F.3d 191, 198 (2d Cir. 2001)). But, though Robles assumes otherwise, Rule 60(b) is not a direct means to that end.

judgment against him "would not have been entered had this fact been known").) At the same time, Robles asserts that his ineffectiveness claim against Baines is "not a new claim" because in his initial petition he had argued that he received ineffective assistance of counsel at the "'pretrial'" phase of his case. (Pet. First Reply at 2 ¶ 6 (quoting R&R at 61).) He contends, though, that the Court did not address the claim's merits because it was not yet exhausted. (*Id.* at 3 ¶ 9 (stating that his "ineffective assistance" claim against Baines "was left untouched by Judge Orenstein because of its unexhausted nature").)

Although Robles' initial habeas petition asserted ineffective assistance of counsel on several grounds, they all involved Gallo, not Baines. His petition never mentioned Baines, or the 12-year pre-indictment plea offer that Baines allegedly mishandled. Because Robles did not argue that Baines was ineffective, the Court did not decline to review the claim's merits because Robles failed to exhaust the claim, but because the claim was not before the Court at all. A party's failure to raise a claim in a habeas proceeding does not call into doubt the proceeding's integrity. *See Al Kassar v. United States*, No. 13-CV-3541 (JSR), 2015 WL 1209663, at *2 (S.D.N.Y. Mar. 11, 2015) ("Petitioner does not challenge the validity of his previous habeas proceeding. Rather, his motion raises new claims, which were not raised [before] . . . . His claims are therefore 'beyond the scope of Rule 60(b),' . . . and must be denied.") (quoting *Gitten*, 311 F.3d at 534). Thus, Robles' claim that Baines was ineffective is not an attack on the integrity of his habeas proceeding but on his state conviction. His motion is therefore outside Rule 60(b)'s scope and must be denied.[8] That Robles initially sought to raise this claim in a successive habeas petition is itself an indication of his motion's true nature. (*See* Dkt. No. 56-1.)

---

[8] *See, e.g., United States of America v. Albir Al-Khabbaz*, No. 04-CR-1379 (LAP), 2017 WL 7693368, at *2 (S.D.N.Y. Dec. 18, 2017) ("Defendant raised four different reasons why his attorneys were ineffective [in his initial petition]. Thus, Defendant is not challenging the integrity of his first habeas proceeding because his present ground for relief – counsel's supposed

Finally, Robles' reliance on *Buck v. Davis*, __ U.S. __, 137 S. Ct. 759 (2017), is misplaced. (Pet. Second Reply at 3–4 ¶ 7.) The petitioner in *Buck* filed a cognizable Rule 60(b) motion, and the distinction between Rule 60(b) motions and a successive habeas petitions was not at issue in that case. *See Davis v. New York*, No. 07-CV-9265 (SHS), 2017 WL 5157458, at *2 (S.D.N.Y. Nov. 6, 2017) ("Because [petitioner's] motion is a second or successive habeas petition, he cannot rely on the line of recent U.S. Supreme Court decisions he cites, which address when relief from judgment is proper under Rule 60."); *see also United States v. Short*, 695 F. App'x 822, 823 (5th Cir. 2017) ("[Petitioner's] reliance on *Buck v. Davis* . . . is misplaced because that decision does not support his argument that the district court erred in determining that his Rule 60(b) motion was an unauthorized successive § 2255 motion."). *Buck* simply did not alter the rule that a "motion that 'present[s] new claims for relief from [the underlying] judgment of conviction' or attempts to 'add a new ground for relief' is beyond the scope of Rule 60(b)." *Albir Al-Khabbaz*, 2017 WL 7693368, at *2 (quoting *Gonzalez*, 545 U.S. at 531–32).

### C.    Timeliness

Even if Robles' application were a genuine Rule 60(b) motion, the Court would deny it as untimely. Motions under Rule 60(b)(1)–(3) must be made "no more than a year after the entry of the judgment," whereas motions under Rule 60(b)(4)–(6) must be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1). To decide whether a motion is filed "within a 'reasonable time,'

---

failure to advise him of the risks of deportation – was never raised in that first proceeding."); *James v. United States*, 603 F. Supp. 2d 472, 482 (E.D.N.Y. 2009) ("[A]llegations of ineffective assistance of . . . counsel attack the underlying conviction rather than the integrity of the habeas proceedings."); *Barnes v. Burge*, No. 03-CV-1475 (NGG), 2009 WL 612323, at *2 (E.D.N.Y. Mar. 9, 2009) (converting Rule 60(b) motion into successive habeas petition where petitioner previously claimed ineffective assistance of counsel on one ground but later filed a Rule 60(b) motion alleging two other grounds); *Abu Mezer v. United States*, No. 01-CV-2525(RR), 2005 WL 1861173, at *2 (E.D.N.Y. July 27, 2005) (Rule 60(b) motion improper because "it seeks to attack the underlying criminal conviction (based on . . . ineffective . . . counsel) rather than the integrity of the original habeas proceeding").

11

the Court 'must scrutinize the particular circumstances of the case, and balance the interest in finality with the reasons for delay.'" *Carbone*, 857 F. Supp. 2d at 488 (quoting *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983)).

The Court denied Robles' habeas petition on November 14, 2012, and the Clerk issued a final judgment the same day. (Dkt. Nos. 45, 46.) Robles did not file this motion until August 25, 2017—almost five years later and well beyond the one-year statutory period for motions under Rule 60(b)(1)–(3), and not a "reasonable time" to file a motion under Rule 60(b)(4)–(6). *See, e.g.*, *Kellogg v. Strack*, 269 F.3d 100, 104 (2d Cir. 2001) (26 months "constitutes a patently unreasonable delay absent mitigating circumstances").

Nor is there any reason to exclude the time that his second § 440.10 motion and related appeals were pending in state court (July 2012 to May 2015) and when his motion to file a successive petition was pending in the Second Circuit (August to September 2015). (*Supra* at 3–5.) Robles has known about the 12-year pre-indictment plea offer since May of 2004. (*Supra* at 4.) Indeed, in a letter to Justice Braun before his sentencing in July of 2004, Robles argued (as he does here, more than a decade later) that he would have taken this offer had it been conveyed to him. (Pet. Mot. at 20.) Because Robles could have raised the issue on direct appeal or in his first § 440.10 motion, the pendency of proceedings between 2012 and 2015 do not excuse the delay. Even if the Court were to overlook the time that passed during the pendency of these recent proceedings, however, approximately two years of delay would still go unexplained, which is beyond "a reasonable time."[9] *See, e.g.*, *Arias v. Connolly*, No. 15-CV-5476 (NGG),

---

[9] Robles allowed more than three months to pass between May 18, 2015 (when the New York Court of Appeals denied leave to appeal the denial of his second § 440.10 motion) and August 27, 2015 (when Robles filed his motion to file a successive habeas petition in the Second Circuit). (*Supra* at 5.) Robles then allowed almost two years to pass between September 21, 2015 (when the Second Circuit denied certification) and August 25, 2017 (when he filed this motion). (*Id.*)

2017 WL 5633195, at *4 (E.D.N.Y. Nov. 21, 2017) ("Petitioner offers no explanation for why the thirteen-month delay between the dismissal of his petition and the filing of his Rule 60(b) motion challenging that dismissal was 'reasonable.'"); *Reynolds v. Greene*, No. 9:05-CV-1539, 2010 WL 604179, at *4 (N.D.N.Y. Feb. 16, 2010) ("over two years" not "a reasonable time") (collecting cases); *James*, 603 F. Supp. 2d at 479 (21 months). Consequently, even if Robles' application were a true Rule 60(b) motion, it would be denied as untimely.

## III.    Conclusion

For these reasons, Robles' motion is denied.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: March 14, 2018
      Brooklyn, New York